## Maule *versus* Bucknell *et al.*

*What contracts to pay the debt of another are within the Statute of Frauds.— Cases relative thereto discussed and classified.*

Where a majority of the directors of a corporation transferred part of their stock and resigned as directors that their transferrees might be elected in their stead, and have control of the affairs of the company, in consideration, as was alleged, of their verbal promise to pay all the debts; and after such transfer and election, but a small portion of the debts was paid, in consequence whereof the corporate property was sold by the sheriff, and a large part of the indebtedness left unpaid and lost, including a debt due by the company to one of the original directors and an alleged promissee: in an action by him, to recover therefor, against the promissors, it was *Held*, that the promise of the defendants was within the Statute of Frauds, and that the plaintiff could not recover.

| | |
|---|---|
| 50 | 39 |
| 134 | 524 |
| 50 | 39 |
| 141 | 388 |
| 50 | 39 |
| 167 | 434 |
| 50 | 39 |
| 21 SC | 595 |
| 50 | 39 |
| e209 | 2 |
| 50 | 39 |
| e220 | 489 |

Error to the District Court of *Philadelphia*.

This was an action of *assumpsit* by William Maule against William Bucknell, Stephen R. Crawford, John B. Austin, and Philip Quigley.

The declaration contained four special and the common counts.

The first set forth that the plaintiff and three others were respectively stockholders and directors of the Eastern Market Company, and had control of the company's affairs; that in consideration that they would respectively transfer certain of their stock to the defendants and resign their office of directors, that thereby the defendants might become directors, the defendants promised the plaintiff and his three co-stockholders and directors, to pay off certain arrears of ground-rent and interest on mortgages and other indebtedness due by the company,—that they performed the consideration—that among the said indebtedness the defendants promised to pay was a certain debt due by the company to the plaintiff, which the defendants, after notice and reasonable time to pay, have not paid, to the plaintiffs' damage of $50,000.

The second count set forth the same recital and promise (with an averment that the value of the stock should be increased), and performance on the part of the plaintiff and his three co-stockholders and directors; that the real estate of the company was then threatened to be sold under certain executions for debts which the defendants had promised to pay, and the defendants, after notice and reasonable time to pay, have not paid the same, and suffered the property of the company to be sold under those executions, whereby the plaintiff's shares of stock became worthless, to his damage of $100,000.

The third and fourth counts were a substantial repetition of the first and second, with fuller averments of the condition of the company and their property.

[Maule *v.* Bucknell *et al.*]

Then followed the common counts for goods sold and delivered, goods bargained and sold, work and materials, money lent, money paid, money had and received, account stated, interest due, with the common conclusion.

The bill of particulars under the common counts claimed the amount of the plaintiff's judgment against the company and the value of his lost stock.

The defendants demurred, setting forth as their special causes of demurrer:—1. That the promise declared on was joint, and the non-joinder of the other promissees; 2. That it was not in writing and within our Statute of Frauds, Act April 26th 1855; and, 3. That it was unlawful and against the policy of the law.

The court overruled the demurrer, with leave to plead over, deciding that the second objection did not properly arise on demurrer, it not being requisite to aver in the pleadings a promise within the Statute of Frauds, to be in writing, that objection being only maintainable at trial on objection to evidence.

The defendants then severally pleaded *non assumpsit*, set-off, payment with leave, &c.

On the trial, after giving in evidence the charter of the company, the plaintiff offered to prove by E. L. Carpenter, that the defendants, about September 1860, agreed to pay off the arrears of ground-rent and interest upon mortgages upon certain real estate of the Eastern Market Company, and the other debts of the company, whereby the value of its capital stock would be increased, upon receiving, and in consideration of the plaintiff and Messrs. Beitler, Bates, and Bishop, respectively, transferring, each fifty shares of their own stock of the company to the defendants, and resigning their office of director of the company, and the defendants thereupon becoming directors of the company in their stead, and obtaining control of the affairs thereof.

To be followed by evidence of the then condition of the company,—the company owning real estate worth $340,000, producing a net income of $36,000, their property being subject to $141,000 permanent encumbrances, and the company owing $122,000 other debts, having assets to the amount of $57,000, and resources in $60,000 of preferred stock, and a reversionary interest in about $300,000 of company bonds and mortgages, to secure the same after payment of their debts, that the company were pressed by about $8000 of their debts—and also proof of the plaintiff and defendants' relation to the company at the time the agreement was made, that the company then owed the plaintiff certain debts which by said agreement the defendants agreed to pay, and owned certain stock of the company, which debts the defendants have not paid, with proof that by the defendants not performing that agreement the plaintiff's stock has been lost, the defendants being large creditors of the

[Maule *v.* Bucknell *et al.*]

company—and also by proof that the plaintiff and Beitler, Bates, and Bishop duly transferred fifty shares of their stock to the defendants respectively, and resigned their office of directors and surrendered all the above-mentioned assets of the company to the defendants, and the defendants thereupon became directors and obtained control and management of the affairs of the company and of said assets, with which, with proper management, the debts of the company could have been paid, including the debts of the company to the plaintiff, and the stock of the company would have been increased in value. And afterwards the defendants partly performed their agreement by paying said arrears of ground-rent and interest due and two debts of the said company, but refused further to perform the same."

The court below directed a nonsuit, upon the ground that the contract alleged was within the Statute of Frauds. The plaintiff thereupon moved to set aside the nonsuit, for the following reasons:—

1. Because the learned judge erred in ordering a judgment of nonsuit to be entered upon the plaintiff's evidence and offer of evidence.

2. Because the learned judge erred in ruling that in law no action would lie upon the agreement offered to be proved by the plaintiff, with the other evidence offered by the plaintiff, and that said evidence of said agreement was inadmissible and incompetent in law, unless the same or some memorandum or note thereof in writing and signed by the defendants, or some other person by them authorized, be put in evidence.

3. Because the learned judge erred in not admitting the evidence offered by the plaintiff, and submitting the same and the meaning thereof to the jury to find as a question of fact whether the agreement in question was an original promise not requiring, or a collateral promise requiring in law the same, or some memorandum or note thereof in writing and signed by the defendants or some other person by them authorized.

The court below, on argument, dismissed this motion. This writ was thereupon sued out by the plaintiff, who averred

1. That the court erred in ordering a judgment of nonsuit to be entered upon the plaintiff's evidence and offer of evidence, and in refusing to set aside the same.

2. That the court erred in ruling that in law no action would lie upon the agreement offered to be proved, with the other evidence offered by the plaintiff, and that said evidence of said agreement was inadmissible and incompetent in law, unless the same or some memorandum or note thereof in writing and signed by the defendants, or some other person by them authorized, be put in evidence.

[Maule *v.* Bucknell *et al.*]

*B. H. Brewster* and *George L. Crawford*, for plaintiffs.—
There is raised upon this record not only the question whether the
promise sued upon is within our Statute of Frauds, Act of April
26th 1855, but also the two other questions raised upon the de-
murrer, viz.: whether that promise is joint, and there is a non-
joinder of other joint promissees—and whether it is unlawful and
against the policy of the law.

1. The objection that this promise is joint, and that there is a
non-joinder, is to the form of action and not to the merits. It is
submitted that the plaintiff's right of action is several and not
joint.

The right of the obligee in a contract is several, if the contract
contains distinct grants or promises of distinct sums to distinct
payees (1 Pars. Cont., 5th ed., p. 13), and if his interest in the
contract and damages sustained are several, which will depend
upon the circumstances of each case, the relation of the parties,
and the nature of the consideration (pp. 14, 15, 16, 17, 18), and
if the consideration be several, moving from each severally, (pp.
19, 20),—and there may arise on the same contract a joint duty to
all and several duties to each of the parties, (p. 20). Promises
must sever "if the consideration be several, as, for example, in
consideration of ten shillings paid by one and ten shillings by
another:" Bell *v.* Chaplain, Hardres 326 ; Jones *v.* Robinson, 1
W. H. & G. 454.

According to the leading case of Eccleston *v.* Clipsham, 1
Saund. 153, the proper parties to the action are determined by
the interest, whether joint or several ; and to Windham's Case, 5
Co. 7, a joint covenant is taken severally in respect of the seve-
ral interests of the covenantees—in respect that the grant cannot
take effect but at several times—in respect of the incapacity or
impossibility of the grantees to take jointly—in respect of the
cause of the grant or *ratione subjectæ materiæ,* and *ne res des-
truatur et ut evitetur absurdum.* See Palmer *v.* Sparshott, 4 M.
& G. 137 ; Poole *v.* Hill, 6 M. & W. 835 ; Servante *v.* James, 10
B. & C. 410.

In this case the motive and consideration was several as to the
plaintiff,—the payment of his separate debt, the increase of the
value of his remaining separate shares of stock, his resignation
as director, the transfer of his fifty shares of stock to the defend-
ants, were all several acts ; the contract was made with the pro-
missees at different times ; the plaintiffs' interest in the contract
and right to damages are several, and his judgment must be seve-
ral, the damage to each being different, as to the debt in nature,
and as to the stock in amount.

2. It is further submitted that the promise in question is not
unlawful, or against the policy of the law.

The objection of illegality, as against public policy, receives no

[Maule v. Bucknell et al.]

favour with judges, and the contravention of public policy must be without doubt unquestionable to avail: Richardson v. Mellish, 2 Bing. 242-3 (Best, C. J.), 252 (Burrough, J.); Egerton v. Brownlow, 4 Clark App. Cas. N. S. 1; Crompton, J., pp. 70-1; Cresswell, J., pp. 87-8; Talfourd, J., p. 96; Wightman and Erle, Js., p. 100; Alderson, J., pp. 106-9; Parke, J., pp. 126-9; Cranworth, L. C., p. 253; 4 M. & W. 657; Aubin v. Holt, 2 K. & J. Ch. 70.

This contract can be illegal only as a sale of a public office or trust, or as being directly antagonistic to the duties of a private trust: Story's Contracts § 577; Blatchford v. Preston, 8 T. R. 89; Richardson v. Mellish, 2 Bing. 252; Hartwell v. Hartwell, 4 Ves. 811; East India Co. v. Neave, 5 Ves. 173. And the sale of a *public* office is valid if with the consent of the appointing power: Blatchford v. Preston, 8 T. R. 94; Bowers v. Bowers, 2 Cas. 74.

Here a director of a strictly private corporation, an essentially private trust, being both a stockholder and creditor of the company, which is under temporary embarrassment, with its assets, which gives value to the stockholders' stock, and is the fund for the creditors' payment, in danger of sacrifice from pressing debts it is temporarily unable to pay, sells part of his stock to another creditor, who thus becomes also a stockholder and creditor, and resigns his directorship that his vendee may be legally elected in his place, in consideration of his vendee paying all the debts of the company, but the permanent encumbrances which are permanent investments of the holders,—thereby relieving the company, saving its assets from sacrifice, and increasing the value of its stock; thus not only possibly under circumstances, but inevitably, benefiting all the *cestuis que trustent*, creditors and stockholders, being in no possible way antagonistic to the duties of the trust, which is to pay debts for the creditors, and protect the assets and increase the value of the stock for the stockholders,—only having the indirect effect of substituting in the directorship other parties in the same situation, each being both stockholders and creditors, —and being essentially and substantially not a sale of a directorship but of stock, which gave the appointing power and the change of directors being but incidental in the contract.

If such a contract be unlawful against the policy of the law, it is absolutely void, and could not be legalized by the assent of parties; but would it be pretended to be invalid if every stockholder and creditor had signed his written consent to it?

To declare such a contract void would be to deprive trustees of an embarrassed property of the most natural, appropriate, just, and frequently the only means of relief.

3. It is also submitted that the contract in question is not within the Act of April 26th 1855.

It does not apply where the promise to pay the debt of a third

[Maule *v.* Bucknell *et al.*]

person arises upon a new consideration moving between the pro-
missor and promissee, giving the promissor a benefit he did not
before enjoy : 1 Parsons' Contracts 497–8 ; Leonard *v.* Vreden-
berg, 8 Johns. 29 ; Farley *v.* Cleveland, 4 Cow. 432 ; or if it
springs out of any new transaction, or move to the party promis-
ing upon some fresh and substantial ground of a personal concern
to himself (Roberts on Frauds 232), or where the primary and dis-
tinctive obligation assumed by the defendant is different from that
of a guarantor, although as incidental to and in the course of the
discharge of that obligation the debt of another is satisfied,
Browne's Stat. of Frauds, § 212,—where the main purpose of the
promissor is not to answer for another, but to subserve some pur-
pose of his own, though it be in form a promise to pay the debt
of another, and its performance incidentally extinguish another's
liability : Parsons Mar. Law, ed. 1862, p. 74 ; Burge on Surety-
ship 26 ; Fell on Guar. & Sur. 21 ; Addison's Contr. 38 ; Story's
Contr. 1015, h, p. — ; or where the defendant for his own use and
advantage procures from the creditor the surrender of a security
which the latter holds for the debt owing him (Browne, § 201–2
and note, 204 and note) ; or where there is a trust assumed by the
defendant in regard to property in the hands or under the control
of the plaintiff, and in which the discharge of the third person's
debt is merely incidental to the execution of that trust : Browne
206–211.

It contemplates contracts of mere guaranty—not where the dis-
charge of a third person's debt is only incidentally involved, but
a promise for the purpose of answering for another's debt : Browne,
§ 168, 212.    And it is not necessary that the original debt be dis-
charged to take the promise out of the act : Browne, § 194, 200,
212 ; 1 Pars. Contr. 497, 8 ; Farley *v.* Cleveland, 4 Cow. 439. See
also Nelson *v.* Boynton, 3 Met. 399 ; Leonard *v.* Vredenberg, 8
Johns. 39 ; Alger *v.* Scoville, 1 Gray 396, 7 ; Fish *v.* Thomas, 5
Id. 45 ; Jepherson *v.* Hunt, 2 Allen 423 ; Allen *v.* Thompson,
10 N. H. 35 ; Hilton *v.* Dinsmore, 21 Maine 413 ; Emerson *v.*
Slater, 22 How. 43 ; Malone *v.* Keever, 8 Wright 107 ; Arnold
*v.* Stedman, 9 Id. 186 ; Warnock *v.* Grossholtz, 3 G. 234 ; Hop-
kinson *v.* Davis, D. C., Leg. Int. for 1863, p. 76.

In the present case the payment of the plaintiff's debt was inci-
dental only, and not the main purpose and object of the defendants,
which was to subserve a purpose of their own ; the promise arose
out of a new and fresh consideration of harm to the plaintiff, and
benefit to the defendants, which they had not before or otherwise
enjoyed ; the defendants procured for their own use and advan-
tage from the plaintiff the surrender of the assets of the company,
and their control, which was a security for and means of paying
the plaintiff's debt he held ; and there was a trust assumed by the

[*Maule v. Bucknell et al.*]

defendants in regard to these assets, and the discharge of the plaintiff's debt was incidental to the execution of that trust.

*St. George Tucker Campbell* and *E. Spencer Miller* (with whom were *James E. Gowen* and *John C. Knox*), for defendants. —The demurrer is not before the court; that has been overruled, and those who filed it are not the plaintiffs in error. They withdrew their demurrer, pleaded *non assumpserunt*, set-off, payment with leave, &c., and on these issues the case was tried. The charter of the company was put in evidence, and then the offer was made, overruled, and the plaintiff nonsuited. We confine the plaintiff to his offer. Upon that, under the pleadings, the case is now to be heard. We deny that the offer could have been proved, but in the form in which this case comes before the court, we perhaps must admit that the plaintiffs were prepared to do so.

1. Is not this a contract on which the alleged promissees must sue jointly? This depends on the form of the contract and the nature of the interest involved in it. Whether the former shall prevail against the latter, or the latter against the former, has been subject of frequent discussion. Perhaps the rule is best expressed by Pollock, C. B., in Keightley *v.* Watson, 3 Exch. 715. See also Parsons on Contracts 15. Here both the form of the contract and the interests involved require the joinder of all the promissees as plaintiffs. The form of the contract, as it is declared in, is joint. If there are no "words of severance" it is joint. The words "every of them" and "each" are words of severance, but in Wood *v.* Hummell, 4 Watts 51, the court say: "Perhaps an unreasonable effect has been given to trifling words of severance in cases like the present;" and in Greiner's Estate, 2 Watts 415, in spite of the words "every of them," the court held the bond joint only.

In all the counts in this case it is averred that for a certain consideration "they, the defendants, promised the plaintiffs, and the said Daniel M. Beitler, Samuel Bates, and Jacob F. Bishop, to pay off," &c. In all the counts the "promise" of the defendants to these four parties is spoken of, as if it were one promise and not several. So in the offer of testimony while the agreement is stated generally, and not as one made with anybody, which perhaps is an informality in the offer, the consideration is mentioned as coming from all four of the promissees.

A careful examination of the pleadings and offer of testimony will also show that the contract is joint in respect of the interests involved within the meaning of the cases. As to the considera-tion, see 1 Pars. on Cont. 19; May *v.* May, 1 Car. & P. 44; Story on Cont. § 33 c; Osborne *v.* Harper, 5 East 225; Chanter *v.* Leese, 5 M. & W. 698; Lane *v.* Drinkwater, 5 Tyr. 40; Mytinger *v.* Springer, 3 W. & S. 406.

[Maule *v.* Bucknell *et al.*]

The consideration alleged here is the transfer to the defendants of two hundred and thirty shares of stock, and the resignation of the four promissees, "that thereupon and thereby the defendants might become directors of said company, and obtain control of the affairs thereof." Could any consideration contributed by several, tend more manifestly to make a joint contract under the cases mentioned, than this? The transfer of no one man—the resignation of no one—would have effected the object. The promissors could not have become directors but by an entire joint carrying out of the plan.

Another test of the jointness of the contract in respect to the interests involved, is the mode or form in which the promissees receive from the promissors the thing promised. See Hatzell *v.* Griffith, 4 Tyr. 487; Byrne *v.* Fitzhugh, 5 Id. 54; Lane *v.* Drinkwater, Id. 40; Story on Cont. 33 c.

In the first and third counts the promise alleged is to pay the indebtedness of the company; and the claim is for the payment of a debt due to the plaintiff. In the second and fourth counts the promise is the same, but the damage alleged is that occasioned to the stockholders by the failure to pay the debts, and a consequent destruction of the corporate property by sheriff's sales, rendering the stock valueless. As to the second and fourth counts, it is scarcely necessary to show how single and entire what the promissors were to do is. The payment of the entire indebtedness of the company was to have a beneficial effect, diffused over the whole stock, which was to make it valuable. The stock of all the stockholders was to be benefited alike; no special or several advantage was to accrue to any one. The offer was single under all the counts, and set up a contract to pay all debts, which, if done, would enure to the benefit of all the stockholders, as well as each creditor. It is manifestly joint for this reason, and cannot be made several by the mode of declaring on it.

A third test of the jointness of the contract in respect of this matter of interest, is the nature and result of the remedy between the parties. Where it is manifest that a recovery by each one severally would be unjust and impossible, it is a strong argument in favour of the jointness of the contract. See Anderson *v.* Martindale, 1 East 500; Lane *v.* Drinkwater, 5 Tyr. 40; Bradburne *v.* Bosfield, 14 M. & W. 559; Sorsbie *v.* Park, 12 Id. 336.

The plaintiff here transferred to the defendants eighty shares of the par value of $8000, and resigned as a director, and the defendant bound himself to pay debts to the amount of $263,544.83, according to the plaintiff's offer. This is hardly conceivable.

But the offer sets forth that the defendants "became directors and obtained control and management of the affairs of the company and of said assets, with which, with proper management, the debts of the company could have been paid."

[Maule *v.* Bucknell *et al.*]

The true allegation then is, that the defendants, for the above consideration, agreed to make the assets of the company pay its debts; that is, they agreed to become sureties for the company's debts.

Can there be a stronger example of a joint interest? In each count the plaintiff states how much stock to be benefited by this each promissee holds. In the same suit in which he claims his debt he includes damages for the depreciation of his stock. He cannot separate them; and if either claim makes the contract joint, it is entirely joint.

It is a promise, which, if it could be asserted at all for creditors or stockholders, other than those to whom it was immediately made, is so completely joint, that their rights could best be asserted in the name of the company.

2. The second point is, that this contract is void as being against public policy.

A contract for the sale or purchase of a public office is undoubtedly illegal and null. But plaintiff says that it is only a sale of a public office that is illegal. A trust cannot be delegated, when it requires the exercise of discretion, unless the deed, charter, or by-laws creating the trust, permit it. But in the case of the sale of the office of trustee, new and additional reasons apply to forbid it. The cases make no difference between public and private offices or trusts, and apply the same doctrine of public policy to both of them. See Sugden *v.* Crossland, 3 Sm. & G. 192; Bowers *v.* Bowers, 2 Casey 74; Card *v.* Hope, 2 B. & C. 661; Filson's Trustees *v.* Hines, 5 Barr 457; Davidson *v.* Seymour, 1 Bos. 88; Gray *v.* Hook, 4 Coms. 457; 18 Pick. 472; 4 Cow. 399; Harrington *v.* Duchatel, 1 Br. Ch. Cases; Hopkins *v.* Prescott, 4 C. & B. 578; Blatchford *v.* Preston, 8 Term Rep. 89; Waldo *v.* Martin, 4 B. & C. 319; Clippinger *v.* Hepbaugh, 5 W. & S. 315; Hatzfield *v.* Guldin, 7 Watts 152; Eddy *v.* Capron, 4 R. I. 394; Cunningham *v.* Cunningham, 18 B. Monroe 24.

The contract here alleged is this: that the promissees, duly elected directors by the stockholders, would transfer to the defendants enough stock to qualify them for the office and resign, that they might become directors of the company and control its affairs. Many charters provide that in case of death or resignation, the remaining directors may fill the vacancy. It is a fraud on such a privilege to make a vacancy in order to fill it, or to make the vacancy and the filling of it a matter of agreement. Admitting that all debts were to be paid, can it be possible that a director of a corporation, established for the public good, can sell his office, because he alleges that it is for the best? The stockholders are to judge of the fitness and capacity of their directors. To sustain such a contract as this, will be to make elections by

[*Maule v. Bucknell et al.*]

stockholders a mere form, and the substantial organization one subsequently arranged by out-of-door intrigue.

But the crowning argument here is a simple reference to the allegations in the plaintiff's statement of facts. As he asserts, the stockholders of the Eastern Market Company elect certain of their number directors. These assume to substitute in their places the largest creditors of the company, who have no interest in the stock, but have transferred to them enough to qualify them; one of them, by far the largest creditor, for some reason desires that his name shall not appear, and his clerk is made director. The result is that the policy of creditors, which is often antagonistic to that of the stockholders, is substituted for their policy; and while the creditor assumes the fiduciary power and influence, his clerk is put forward to represent the fiduciary responsibility.

3. The third question is, whether the contract is within the Statute of Frauds.

A contract in writing within the statute requires a consideration just as much as any other contract; it must be a consideration moving to the guarantor. It may be a credit given to his friend, or a percentage given to him for his guaranty, and none of the cases doubt the applicability of the statute. The doctrine as stated by Chief Justice Kent in Leonard *v.* Vredenburgh, 8 Johns. 29, nullifies the statute. It meets with the disapprobation of Mr. Browne in his excellent treatise on the subject, p. 216. To say generally that where " the leading object of the undertaker is to subserve or promote some interest or purpose of his own," or where " a new consideration moves between the promissee and promissor," or when the promissor " gets a benefit he did not enjoy before," or where " it springs out of any new transaction, or moves to the party promising upon some fresh and substantial ground of a personal concern," the statute does not apply, is first to make a rule of the vaguest kind, and secondly, to rule counter to the current of authority. Some other distinction must be drawn, or the statute might as well be repealed.

In the following cases such a distinction is more or less accurately presented: 1 Wms. Saund. 211 e, note 1; Smith on Contracts 47, note a; Chandler *v.* Davidson, 6 Blackf. 367; Kingsley *v.* Balcome, 4 Barb. 138; Shoemaker *v.* King, 4 Wright 107. See also, Mowbray *v.* Cunningham, cited in Jones *v.* Cooper, Cowp. Rep. 227; Chitty on Contracts 52; Parsons 496; Reading Railroad Co. *v.* Johnston, 7 W. & S. 31; Cobb *v.* Paige, 5 Harris 469; Paul *v.* Stackhouse, 2 Wright 302; Allshouse *v.* Ramsay, 6 Wh. 331; Pitman, Prin. & Sur. 8, 13, 26; 11 Ad. & E. 438; 22 Conn. R. 317; 1 Gray 391; 3 Humph. 330; 5 Cush. 488; 11 Id. 1; 30 Eng. L. & Eq. 510; 13 M. & W. 570; 25 Wend. 247; 20 Verm. 205; 28 Id. 135; 29 Id. 169; 1 Sanf.

[Maule *v.* Bucknell *et al.*]

S. C. R. 514; 19 Barb. 258; 11 Grat. 636; 17 Ill. R. 88,105; 2 Jones's Law Rep. 329; 10 Iredell 13; 13 Id. 86; 3 Id. 187.

In the cases cited by the plaintiff, disregarding the mere *dicta* of the judges,—their efforts to express a general rule; in language often cited from others; thus handing on an error from case to case, and looking only at the facts and the conclusions from them, we will generally find in the real results of the decisions no departure from the principle just laid down. Who can say that the consideration received by the defendants in this case was commensurate with a liability for all the debt of the company; that upon the mere transfer of the stock and resignation, without more, an action would have lain against the defendants; that the whole debt of the concern was thereupon " shifted" to the defendants; that the consideration would support a promise to pay all the debts, amounting, as plaintiff alleges, to $263,544.83; or that equity would raise a liability to that extent on the ground of trust or fraud? It is nowhere alleged that the stock was sold to the defendants; on the contrary, the presumption is that a mere transfer to qualify them was intended. If that is so, who will argue that merely enabling them to become directors was a consideration which, of itself, raised a promise to pay all the debts? But suppose that the word transfer implies a gift or sale of this worthless stock, and not a mere colourable use of it, will a transfer of a few shares in a company overwhelmed with debt, of itself raise a duty to pay all its debts?

We submit these views with the hope that this court will not join in the effort to nullify the statute,—to make the exceptions to it more numerous than the cases to which it applies, but will give it a wholesome and reasonable application, to remedy the evils to which it was directed, and which have been entirely forgotten in the refinements on the one hand, and the carelessness on the other, to which we have referred.

The opinion of the court was delivered, June 29th 1865, by

Strong, J.—Besides the common counts, to support which no evidence was given, the declaration in this case contained four, based upon a special contract. They aver, in substance, that the plaintiff and three others named, were respectively stockholders and directors of the Eastern Market Company; that the company was largely in debt for arrears of ground-rent, for interest of mortgages upon their real estate, and for sums due to other creditors, among which was a debt due the plaintiff of $50,000; that, in consideration that the plaintiff and his three co-stockholders and directors would transfer to the defendants a portion of the stock held by each of them (the amount to be transferred being two hundred and thirty shares in all), and resign their offices as directors, that thereupon and thereby the defendants might become

14 Wr.—4

[Maule *v.* Bucknell *et al.*]

directors of the said company and obtain control of its affairs, the defendants promised the plaintiff and his three co-stockholders and directors named, to pay off the said arrears of ground-rent, the interest on the mortgages, and the other debts due by the company. These special counts then aver, that the plaintiff and his three co-stockholders and directors, relying upon the said promise of the defendants, did transfer to them the shares of stock agreed to be transferred, and resigned their offices as directors, whereupon and whereby the defendants became directors of the company, but that they neglected to pay the debt of $50,000 due from the company to the plaintiff, and neglected to pay the judgments against the company, and its other liabilities, in consequence of which the property of the company was forced to sale, the debt due to the plaintiff was not paid, and his stock was rendered valueless. It was for the breach of the contract thus set out, that the action was brought.

When the case came to trial, the plaintiff, in order to sustain his declaration, offered to prove by the testimony of a witness, the main facts averred ; to wit, the contract as set out ; the condition of the company, its resources and debts; that the plaintiff was one of its stockholders and creditors ; that he and his three co-stockholders named had each transferred to the defendant fifty shares of their stock, and resigned their office as directors ; that the defendants had thereupon become directors and obtained control of the affairs of the company; and that they had paid the arrears of ground-rent and interest, with two other debts of the company, but that they then refused further to perform their contract. To this offer the defendants objected, and it was overruled by the court. We have, therefore, to consider whether the court was right in refusing to permit the witness to testify to these facts.

Three reasons have been assigned during the argument in support of the rejection of the proffered evidence, either of which, if well founded, is sufficient to justify the action of the court. The first is, that the contract declared on was joint; that the alleged promise was to the plaintiff and three other persons as one party ; and that the interests involved were also joint. If this be so, an action by one of the promissees alone cannot be maintained, and the testimony of the witness, even if received, could have availed the plaintiff nothing.

The second reason adduced for rejecting the plaintiff's offer is, that the contract was against public policy, and therefore void, so far as it is executory. And the third is, that the contract is within the Statute of Frauds, being an engagement to answer for the debt or default of another, and not being in writing. We do not propose now to consider all these grounds of objection to the offer made by the plaintiff. To do so, would be a work of superfluity, for we are of opinion that the Statute of Frauds is an

[Maule v. Bucknell et al.]

insuperable obstacle in the plaintiff's way. His offer was to prove a verbal contract, which the law declares of no force.

It must be admitted that the cases, respecting the application of the Statute of Frauds, are greatly confused and irreconcilable with each other. Upon no subject, perhaps, has there been more diversity of judicial decision. The value of the statute is everywhere admitted, and its language is plain, but in the supposed justice of a particular case, a court has often lost sight of the exact rule prescribed by the legislature. As much ingenuity has been expended in efforts to take individual cases out of the statute as was formerly devoted to avoiding the Statute of Limitations, and in these ingenious efforts, principles have been asserted, which, if sound, practically deny all effect to the expressed will of the legislature. Happily, there are glimmerings of late, of a tendency to return to a plainer reading of the act, and to give to it a construction more consonant to the apparent mind of the legislature. In this state we have very few decisions upon the subject, for our statute has been in existence only since 1855, but as it is a substantial copy of the British statute, and those of other states, the judgments of their courts cannot be overlooked. Without attempting any extended review of them, we think certain principles may safely be considered as settled, or if not settled, sustained by reason, and the authority of the best considered adjudications. It is not true, as a general rule, that a promise to pay the debt of another is not within the statute, if it rests upon a new consideration passing from the promissee to the promissor. A new consideration for a new promise is indispensable without the statute, and if a new consideration is all that is needed to give validity to a promise to pay the debt of another, the statute amounts to nothing. Nor can it make any difference that the new consideration moves from the promissee to the promissor. The object of the statute is protection against "fraudulent practices commonly endeavoured to be upheld by perjury," and to these all suits upon verbal contracts to answer for another's debt or default are equally exposed, no matter whence the consideration of the contract proceeded or to whom it passed. Indeed many of the cases hold that the question always is, What was the promise? not What was its consideration? In note (i) to Forth v. Stanton, 1 Williams's Saunders 211 b, it is said: "The question indeed is, What is the promise? Whether it be a promise to answer for the debt, default, or miscarriage of another, for which that other remains liable, not what the consideration for that promise is, for it is plain that the nature of the consideration cannot affect the terms of the promise itself unless, as in the case of Goodman v. Chase, 1 B. & A. 297, it be an extinguishment of the liability of the original party." The doctrine of this note is approved in Fitzgerald v. Dresser, 94 Eng. C. L. Rep. 885, and with some

[Maule *v.* Bucknell *et al.*]

slight modifications it results very palpably from the words of the statute. In describing the class of cases in which it is required that the agreement, in order to sustain an action, shall be in writing, no reference is made to the consideration. It is the promise alone which is mentioned. Yet it cannot be denied that there is a class of cases in which the consideration has been more regarded than the nature of the promise. They do not, however, rule that a promise to pay the debt of another is not within the statute merely because it is founded upon a consideration moving from the creditor of that other to the promissor. I find no approved cases holding that. They regard the consideration as of importance only where it is either a substantial transfer of the creditor's claim to the promissor, making the transaction a purchase, or where it is a transfer to the promissor of a fund for the payment of the debt, or property or securities charged with its payment. If such funds come to him from either the debtor or the promissee, his agreement to pay the debt need not be in writing; for, as was said in Williams *v.* Leper, 3 Burr. 1890, the promise is considered as not to pay the debt of another, but the debt of the property which has come to his hands. In all such cases the promissor may be regarded as having purchased the goods obtained by him on the faith of his promise, and his promise may be considered as an agreement to pay the price: Nelson *v.* Boynton, 3 Met. 396.

It is undoubtedly true that a promise to answer for the debt or default of another is not within the statute, unless it be collateral to a continued liability of the original debtor. If it be a substitute, an arrangement by which the debt of the other is extinguished, as where the creditor gives up his claim on his original debtor, and accepts the new promise in lieu thereof, it need not be in writing. And as the cases referred to show, it may be unaffected by the statute, though the original debt remains, if the promissor has received a fund pledged, set apart, or held for the payment of the debt. But except in such cases, and others perhaps of a kindred nature, in which the contract shows an intention of the parties that the new promissor shall become the principal debtor, and the old debtor become but secondarily liable, the rule, it is believed, may be safely stated, that while the old debt remains, the new must be regarded as not an original undertaking, and that it is therefore within the statute. At least this may be stated as a principle generally accurate. In Williams's Saunders 211 e, note 1, it is said: "The question whether each particular case comes within the clause of the statute or not, depends not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise." The doctrine of this note is supported by very many cases,

[Maule *v.* Bucknell *et al.*]

and it is in harmony with the words of the statute. It is incumbent, then, upon him who would enforce a mere verbal promise of one to answer for the debt or default of another, if the original debt remains, to show that his case is one of those that are recognised as exceptional. And it will be found, after examination, that in nearly all the decisions in which it has been held that such a promise is not within the statute, there was some liability of the promissor, or his property independent of his express promise, or that he had become the actual debtor, so as that between him and the original debtor the superior liability was his. In such cases the consideration for the new promise is regarded as material. Of course I am not speaking of cases where the debt of another is referred to merely as the measure of a promissor's liability, and in which he is liable, whether that debt is paid or not. All of our own cases are in harmony with these principles. In Shoemaker *v.* King, 4 Wright 110, it was said by Chief Justice Lowrie that " while the old debt remains, the new contract cannot be a substituted, but only a collateral one, a promise to pay another's debt, and it is forbidden by the statute as a cause of action." " Yet," said he, " we must not be understood as questioning that large class of cases where a debtor puts money or other means into the hands of another, to be delivered to a particular creditor of his, and the creditor has been held to be entitled to sue." Whether the facts of that case did not bring it within one of the recognised exceptions to the rule that a promise must be regarded as merely collateral and within the statute while the old debt remains, we need not now inquire. We refer to it only as asserting the doctrine. Malone *v.* Keener, 8 Wright 107, was a case in which the defendants, being indebted to the plaintiff, assigned to him a note of a third party with a parol guaranty. They were the principal debtors, and the assignment and guaranty was the mode of paying their own debt. Hence it was held that the parol guaranty was primarily a promise to pay their own debt rather than the debt of another. Arnold *v.* Stedman, 9 Wright 186, was a case within one of the recognised exceptions. There the promissor's property was liable for the debt of another, independent of the express promise, and the defendant undertook to pay the debt of the property.

And among all the cases cited by the plaintiff in error, in which it was held that a promise to pay a debt of another was not within the statute, there are none which are inconsistent with the rule, as we have stated it, if we except Leonard *v.* Vredenberg, 8 Johns. 39. There it was laid down that cases are not within the statute where " the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the new contracting parties." That this proposition is inaccurate, however, is almost universally admitted, and, as we have already

[Maule *v.* Bucknell *et al.*]

remarked, it practically denies all effect to the statute. It cannot be admitted for a moment in the terms in which it was expressed.

If now we revert to the facts of the case before us, there seems no reason to doubt that the promise of the defendants is within our Act of April 26th 1855. It was a promise to pay the debts of "The Eastern Market Company." It was strictly collateral to those debts, not a substituted obligation. Those debts still continued. The company remained the primary debtor, and had they paid, the defendants would have had nothing to pay either to the plaintiff or to the original debtor. The promise of the defendants was therefore in no sense a promise to pay their own debt, or a debt of their property. It was not in relief of any property they owned or upon which they held a lien. Nor was the consideration for the promise of a nature to take the case out of the statute. It was not a placing in the hands of the defendants, by the debtor or the creditor, funds, securities, or property of the debtor pledged or devoted to the payment of the debts. The transfer of the small number of shares of stock, and the resignation by the plaintiffs of their directorship, were to enable the defendants to become directors, not to place funds in their hands to pay the debts. The averment is, that it was their own money they promised to pay in discharge of the debts, and it is because they did not pay their own money that this action is brought.

If then it were true that the plaintiff could sue alone, and that there was no illegality in the alleged contract, which we now neither affirm nor deny, the promise is not enforceable in consequence of the Statute of Frauds, and for that reason the offer of evidence was properly overruled.

Judgment affirmed.