# H. Dutton et al. Trustees of Ivanhoe Lodge, I. O. O. F., No. 432, Appellants, v. Abner Pyle and Thos. B. Brown, trading under the firm name of Pyle & Brown.

*Fraud—Misrepresentations—Essentials to establish cause of action.*

Fraud must be proved; merely to arouse a suspicion thereof is not enough.

To support an action, based on fraudulent inducements to plaintiff to purchase certain mortgages, it must be shown clearly that defendant made the alleged misrepresentations knowing them to be false, or with such conscious ignorance of their truth as to be equivalent to falsehood.

*Evidence—Action based on fraudulent misrepresentations inducing purchase.*

In an action based on alleged fraudulent misrepresentations as inducing the purchase of certain Kansas mortgages, it was not error to reject an offer to prove trouble in collecting interest or principal, or to prove that at a remote period defendant had condemned all Kansas mortgages, or to show by a certain banker that witness had never loaned money in western Kansas.

Argued Nov. 15, 1897. Appeal, No. 131, Nov. T., 1896, by plaintiffs, from judgment of C. P. Chester Co., April T., 1894, No. 49, on verdict for defendant. Before RICE, P. J., WICKHAM, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass. Before WADDELL, P. J.

This was an action brought to recover from the defendant damages resulting from alleged fraudulent misrepresentations inducing the purchase of three Kansas bonds and mortgages sold by defendants to the plaintiffs. There was evidence tending to show that the defendants had said during a conversation which led up to the purchase " we guarantee these loans. We stand between you and loss. My property stands between you and loss. You cannot lose."

Other facts appear in the opinion of the court and the assignments of error.

*Errors assigned* were (1) in directing a compulsory nonsuit. (2) In discharging the rule to show cause why the nonsuit entered should not be stricken off. (3) In refusing to

allow H. H. Dutton, a witness for the plaintiff, to answer the
following question: " Q. Have you ever had any trouble col-
lecting interest or principal on these bonds or mortgages?"
Objected to that that applies simply to that which is a guar-
antee of future things, and therefore is not applicable to this
case.   Objection sustained.)   To which ruling counsel for
plaintiff excepts, and prays the court to seal a bill of excep-
tions thereto, which is done accordingly.   (4) In refusing to
allow the plaintiff to show, by R. Hanes Passmore, a witness
called, that Mr. Pyle, one of the defendants, in a conversation
with him (the witness) condemned the Kansas money loaning
business before they (the defendants) went into the business.
The objection being sustained, counsel for plaintiff excepts and
prays the court to seal a bill of exceptions thereto, which is
done accordingly.   (5) In ruling against the plaintiff in the
following offer: The plaintiff offered to prove by Smedley
Darlington, as follows : " I want to prove by this witness that
he has been in the Kansas loaning business since 1865, and that
he never went into Western Kansas to loan money, for the rea-
son that the rains were very uncertain in that part of the
country, and it made the loaning business very unsafe."   Ob-
jected to.   Objection sustained.   To which ruling counsel for
plaintiff excepts, and prays the court to seal a bill of excep-
tions thereto, which is done accordingly.

*W. S. Harris*, for appellants.—Fraud and intent to deceive do
not proclaim themselves openly, nor can they usually be proved
by direct evidence :   Griswold v. Gebbie, 126 Pa. 353.

Whether the defendant made the declarations with an in-
tention to deceive, is a question of fact for the jury:   Graham
v. Hollinger, 46 Pa. 55.

Whether he believed his statement to be true is a question
for the jury : Dilworth v. Bradner, 85 Pa. 238.

Indeed, perhaps, the true view of the law is that an expres-
sion of an opinion not honestly entertained, and intended to be
acted upon, cannot, in many cases, be regarded otherwise than
as fraud: 1 Jaggard, 579, citing Hickey v. Morrell, 102 N. Y.
454.

So here, it was proper both to lay and prove the warranty
as a representation used to induce the plaintiffs to buy a bad

or a defective article: City Iron Works v. Barber, 102 Pa. 156.

The plaintiffs were induced to part with their money by the alluring statements of the defendants and by their express warranties, all of which were so made as to amount to fraud and deceit.

*Thomas W. Pierce* and *Alfred P. Reid*, for appellees.—To sustain their action in deceit, it was necessary for the appellants to show that the representations were untrue when made —were then known to the appellees to be untrue, and were calculated to induce the appellants to act, and did induce them to act: Cox v. Highley, 100 Pa. 249; Lamberton v. Dunham, 165 Pa. 129; Griswold v. Gebbie, 126 Pa. 353; Erie City Iron Works v. Barber & Co., 106 Pa. 125.

The fact proposed to be proved by R. Haines Passmore, complained of in the fourth assignment of error, did not tend in any way to prove the representations made to be untrue, or that they were known to be such when made.

Nor would the evidence rejected and complained of in the fifth assignment of error tend in any way to prove any allegation in this complaint.

OPINION BY WICKHAM, J., March 21, 1898:

In April, 1889, the defendants, who were engaged in business as private bankers and brokers in West Chester, in this state, sold to the plaintiffs three mortgages, given on as many different properties in southwestern Kansas by the respective owners. These mortgages, which were accompanied by bonds, had been purchased, with others, by the defendants, in the ordinary course of their business, and were by them held for sale. One of the obligations was to secure the payment of $400; another $250; and the third, $400. Each bore interest at the rate of seven per centum per annum. The transaction, so far as it relates to the purchase by the plaintiffs of the first and second, forms the basis of this suit. The payment of each bond was guaranteed, by indorsement, by the Southern Kansas Mortgage Company, which was at the time, so far as the evidence shows, a solvent concern.

For awhile the interest was paid on the loans, then default was made, and finally, on April 3, 1894, this action of trespass

was brought to recover damages for alleged false, fraudulent, and deceitful representations, promises, and warranties made by the defendants, to the plaintiffs, to induce the latter to part with their money. To support the action it was necessary to show that Pyle, the member of the defendant firm with whom the plaintiffs dealt, made the alleged representations knowing them to be false, or with such conscious ignorance of their truth as to be equivalent to falsehood: Griswold v. Gebbie, 126 Pa. 353, and cases there cited.

The plaintiffs' proof fell so far short of this standard that the learned trial judge very properly directed a nonsuit. In the first place, they utterly failed to show that, in 1889, any one of the mortgaged properties was not held by good title, and was not substantially as valuable as represented. Secondly, the evidence, instead of showing recklessness, bad faith, fraud, or deceit on the part of Pyle, rather tended to prove that, at the time, he believed and had reason to believe all that he said. As to the alleged personal warranty or guarantee of the defendants, if it were given, which is denied, it is clearly within the statute of frauds and not enforceable as a contract: Maule v. Bucknell et al., 50 Pa. 39, and there is nothing, in the evidence, to sustain the view that it was any part of a scheme to defraud.

The truth of the whole matter, so far as it is inferable from the meager evidence, probably is, that owing to the years of drouth in southwestern Kansas, farms and villages were deserted and abandoned, lands became in many localities almost valueless, and the plaintiffs, in common with thousands of other eastern investors, including even many of the shrewdest bankers and money lenders, who were seeking large interest, shared in the resulting misfortune. The evidence, including that which was rejected, is not sufficient, however, to show that in 1889, the part of Kansas referred to had reached the condition above depicted, or that the defendants did not honestly believe that the particular investments, made by the plaintiffs, were not safe.

The first assignment of error need not be considered, as no exception or writ of error lies to the entry of a compulsory nonsuit: Haverly v. Mercur, 78 Pa. 257. The second is overruled for reasons already given. As to the third, we fail to see how the answer to the question, " Have you ever had any trouble in

collecting interest or principal on these bonds and mortgages?" would tend to prove the value of the land or the alleged deceit in 1889, or at any other time. The offer referred to in the fourth assignment was to prove that Pyle, at some time not definitely fixed, but before he and his partner commenced loaning money in Kansas, which would necessarily be prior to 1886, the year they began doing business in that state, had said something condemning all Kansas investments. This evidence, to say the least, was too remote. The remark attributed to Pyle may, according to the offer, have been made as far back as 1876. Moreover, we can hardly think that the plaintiffs would wish to be understood as wanting the jury to believe that the defendants, or any one else, regarded every loan made in the great commonwealth of Kansas as fraudulent or valueless. Some things are too absurd on their face to be treated very seriously. The last assignment complains that a certain banker was not permitted to testify that he had never loaned money in western Kansas " for the reason that the rains were very uncertain in that part of the country, and it made the loaning business very unsafe." The testimony as to this witness's individual practice was entirely inadmissible, no matter what motive controlled him, and, for that reason alone, the offer should have been rejected. But even if this evidence, as well as that mentioned in the third and fourth assignments, had all been admitted, there still would not have been enough to warrant the submission of the case to the jury. Fraud must be proved; to merely arouse a suspicion thereof is not enough.

Judgment affirmed.