## Silberstein *v.* Bernstein, Appellant.

*Statute of frauds—Promise to pay debt of another—Oral agreement—Mechanic's lien.*

1. Where a person holding a recorded mortgage on a building in course of construction, and still retaining in his possession a large portion of the mortgage money, agrees orally, to pay the claim of a subcontractor or material man, if he will not file a mechanic's lien, which at the time the latter has a right to file, the agreement will not be construed as one to pay the debt of another, and consequently will not be held to be within the statute of frauds.

*Courts—County court of Allegheny county—Appeal to common pleas—Allowance of appeal—Discretion of court.*

2. On an application to the court of common pleas of Allegheny

county to allow an appeal from the county court of the county, the court of common pleas is to exercise a sound judicial discretion upon due consideration of the allegation of the petition and the relevant matters brought before it, and may refuse the appeal if, upon such consideration it is not satisfied that a retrial is necessary to prevent injustice. An appeal will not be allowed merely because the evidence was in conflict, and there was evidence which if believed by the jury, would have sustained a different verdict, or merely because the court of common pleas would have arrived at a different conclusion upon the issues of fact if it were the province of that court to decide them.

Argued April 29, 1914. Appeal, No. 133, April T., 1914, by defendant, from order of C. P. Allegheny Co., April T., 1914, No. 498, Docket "B," refusing to allow an appeal from judgment of the County Court in case of Samuel Silberstein v. Morris Bernstein. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Petition from an order refusing an appeal from judgment of the county court.

MILLER, J., filed the following opinion:

In this case there was a verdict for the plaintiff for the full amount of his claim. The defendant made a motion for a new trial, which is now under discussion, alleging that the court erred in refusing his point for binding instruction in his favor, for the reasons:

(a) That the evidence offered at the trial was not sufficient to warrant the jury in finding that the promise as alleged in the statement of claim was made, and (b) even if the promise was made, it being for the payment of the debt of another, and the same not being in writing, a recovery was prevented under the provisions of the statute of frauds.

The statement of claim, after showing that the plaintiff furnished materials and did certain work about a building erected for one George West, trading as the Penn Land Improvement Company, as shown in exhibit "A" attached to the statement, sets forth:

"That on July 14, 1911, said bill being still unpaid, said Morris Bernstein, the aforesaid defendant, promised the said plaintiff that if he would not file a mechanic's lien for the aforesaid amount and whatsoever other work he might perform on the said building that he, the said defendant, would pay said bill of $173.15 and all other bills of a similar nature for work then being rendered, because he, the said defendant, held a mortgage against the aforesaid building which had been given him but a few days prior; that the money for which this mortgage had been given had not yet been paid over by him to the said George West, trading as the Penn Land Improvement Company, the owner of the said building, as he wanted to pay all claims for work performed on the said building and then turn over the proceeds to the said George West. Said plaintiff, although then having the right to file a mechanic's lien against said building which lien would have had priority over the lien of the mortgage of the said defendant against the said building, and with the intention of so doing, thereupon agreed not to file a mechanic's lien, but to look to the said defendant for payment of the bill of $173.15 which he had already rendered and for any later bills. The only subsequent work performed was on July 17, 1911, for which work a bill was rendered on said date in the sum of $1.58, a copy of which is hereto attached, marked exhibit 'B.'"

The first question we have to determine is: Was there sufficient evidence to submit to the jury to warrant them in finding that the promise was made as alleged in the statement?

It is undisputed that plaintiff and defendant met in defendant's office on July 14 or 15, of 1911, where plaintiff went to collect a bill owing him by the defendant, that then a conversation arose between them in which both plaintiff and defendant agreed that something was said in relation to a mortgage which defendant had placed upon the West property. At this

meeting plaintiff contends that the promise upon which this suit was founded was made, which was denied by the defendant, with which denial, however, we have nothing to do as far as this discussion is concerned, the credibility of the witnesses and the conclusion to be drawn from their evidence being for the jury.

We have before us a copy of the testimony of the plaintiff, where we find in his direct examination on page 11, after he stated that he met the defendant in his office, the following: "Q. Just continue what took place there. A. He said, 'I placed the mortgage for him,' he said, 'I saw your bill.' 'Well,' I says, 'I am going to file a mechanic's lien.' Q. Who said that? A. I said it, if he didn't pay me soon. 'Well,' he said, 'don't file no mechanic's lien, I am going to pay you that bill, because I have the mortgage on record.' Well, I thought the man was an honest man, a business man, so I have to take his word for it; so I didn't bother anybody any more at all. Q. Did you ever file a mechanic's lien? A. No, sir; I did not. Q. Were you ever paid the bill? A. Never paid the bill."

On cross-examination of the plaintiff we find on page 17.

"Q. And then you talked with him some there, did you, or he talked to you? A. He talked to me. Q. And there was some talk, was there, about this West job? A. Yes, sir; he has told me he saw my bill in Mr. West's place, in his home, and he says, 'I have placed a mortgage for him,' and I says, 'He owes me some money too.' He said, 'Yes, I saw that bill.' I said, 'If he don't pay me I am going to file a mechanic's lien.' And he said, 'Don't file no mechanic's lien, I have a mortgage placed a second time on that property.' . . . Q. He said he had placed a mortgage on this property? A. He told me so; he says the mortgage is on record. He told me not to file a lien, he would pay it."

Continuing on page 18, we find further in cross-examination:

"Q. Did Mr. Bernstein ask you for any release or an assignment of your claim or was there any talk of that kind? A. Why should he ask me for it if he didn't pay me the money? He didn't ask me for nothing. Q. If you didn't file a lien he would pay the bill? A. He will pay the bill. Q. You didn't file a lien there? A. No, sir; I didn't. Q. Did you see Mr. Bernstein after that about this thing, about the payment of your bill? A. I called him on the telephone; he said he was going to send me a check and soon get it settled up, and his check never came."

And on pages 19 and 20, continuing cross-examination, we find:

"Q. You relied on Mr. Bernstein when he said he was going to pay you? A. I relied on him. Q. Why? A. Because he had the mortgage on record; after he said he has the mortgage on record and he hasn't paid the money out that is the reason I relied on his paying me. Q. You relied on his paying you because he had a mortgage on record? A. That is the idea."

The testimony we have quoted was sufficient to warrant the jury in finding that the promise was made. It may be stated in· this connection that there was some evidence on the part of the plaintiff that defendant asked him for a discount of ten per cent on the bill, to which plaintiff replied that they would not fall out about that. There was some evidence also during the trial that plaintiff had brought suit against West on the same bill, after the promise was alleged to have been made. This was submitted to the jury, in connection with the other evidence bearing on the question whether or not the promise was made to the plaintiff and whether or not the same was accepted by him.

This brings us to the next question, as to whether the promise, being a verbal one, is within the provisions of the Statute of Frauds and Perjuries of 1855, P. L. 308, which provides:

"No action shall be brought whereby . . . . to charge

the defendant upon any special promise to answer for the debt or default of another, unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some other person by him authorized."

The act was construed in the leading case of Nugent v. Wolfe, 111 Pa. 471, by Mr. Justice STERRETT, on page 480, as follows:

It is very evident that the statute was not intended to apply except in cases where, in addition to the promisor and promisee, there is also a third party to whose debt or undertaking the agreement of the promisor relates, and not even then unless the liability of the third party continues. In other words, the agreement, to be within the purview of the statute, must in a certain sense be a collateral and not an original undertaking. Independently of the debt or liability of the third party, there must, of course, be a good consideration for the collateral or subordinate agreement, such for example as a benefit or advantage to the promisor or an injury to the promisee. It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which the third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

As was said by Mr. Justice STRONG in Maule v. Bucknell, 50 Pa. 39, 52, "It is undoubtedly true that a prom-

ise to answer for the debt or default of another is not within the statute, unless it be collateral to a continued liability of the original debtor. If it be a substitute, an agreement by which the debt of another is extinguished, as where the creditor gives up his claim on his original debtor, and accepts the new promise in lieu thereof, it need not be in writing. And, as the cases referred to show, it may be unaffected by the statute, though the original debt remains, if the promisor has received a fund pledged, set apart or held for payment of the debt."

The promise under discussion does not come within the statute for either of the two reasons stated in the opinion above cited: (1) "When the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another," and (2) "Though the original debt remains, if the promisor has received a fund pledged, set apart or held for payment of the debt." Either reason would be sufficient to sustain the verdict in this case.

The evidence of defendant shows that he placed the mortgage on the premises on July 11, 1911 (date when recorded), in the sum of $1,325, and that on the date when the conversation between plaintiff and defendant in defendant's office in relation to the mortgage and the alleged promise, took place, he had only paid out on account of the mortgage the sum of $760. It is a fact that at that time the plaintiff had a right to file a mechanic's lien, which would have been prior to that of the mortgage; that said mechanic's lien was not filed and the right to file the same was lost. The evidence shows that after the alleged conversation the defendant paid out the balance of the money secured by the mortgage, in .part at least, for labor and materials furnished for the building then being erected by West on the part of the premises covered by the mortgage, and that the money previously paid out had also in part been paid out for

labor and materials furnished for said building; that some time the latter part of February or early part of March, 1912, after the time to file said mechanic's lien had expired, the defendant purchased the property from the vendee of the mortgagor, receiving credit for the full amount of his mortgage on account of the purchase price, and the evidence tended to show that the defendant after having received credit for the amount of his mortgage, and having paid off all other liens against the property, paid over a small balance to his vendor, the amount of which was very considerably less than the plaintiff's claim. The facts just related either were admitted or could fairly be drawn by the jury from the evidence.

In Hall v. Lincoln Savings & Trust Company, 220 Pa. 485, it was said by the Supreme Court:

"The words alone in which the contract was made were not sufficient to determine whether the promise is within the Statute of Frauds. The circumstances of the transaction must be taken into consideration."

The circumstances surrounding the transaction are such, as shown by the evidence, that the defendant either made the promise to subserve some interest or purpose of his own, or that he held a fund for the payment of the plaintiff's debt, or both. As to the first purpose, it is plain that if plaintiff had filed his mechanic's lien, the lien thereof would have been prior to that of the defendant's mortgage; and as subsequently shown (part of the transaction) that when the defendant acquired title to the property, he did so free from plaintiff's lien, the amount of which would have to have been paid by him out of the purchase money, which, the evidence shows, was not sufficient to meet the same, or the lien would have remained on the property as a prior incumbrance. As to the latter purpose, that defendant held a fund in his hands for the payment of plaintiff's debt, it may easily be inferred that as defendant still had part of the money secured by the mort-

gage in his hands at the time that the alleged promise was made, and that as the money already paid and subsequently paid out by him, at least in part, was used in payment for labor and material furnished for the building being erected upon the mortgaged premises, that therefore part of the money he still had in his hands he held for the purpose of paying off plaintiff's claim.  In this connection, see Burns v. Mazar, 2 Pa. Superior Ct. 436, which is a case somewhat similar to the one under discussion, and where the defendant, a trustee of a church, promised to pay the claim of the plaintiff, a subcontractor, who had done work upon the church for which he had a right to file a lien, if he would not file his lien, and where it was held by the court that the promise was not within the statute.  RICE, P. J., on page 441, in discussing the law of the case says:

"The fact that the original debtor is not discharged from liability is not conclusive of the question.  One instance is where there is a transfer of a fund to the promisor for the payment of the debt, or where property charged with the payment of the debt is transferred to him on his promise to the vendor to pay the debt. . . . Another instance is where the leading object of the promisor is to subserve some interest or purpose of his own. . . .  In both of these classes of cases it is held that the promise is not within the statute notwithstanding the effect is to pay or discharge the debt of another."

See also Hall v. Lincoln Savings & Trust Company, supra, where the statement was made to a subcontractor by an officer of a surety company which had gone on the bond of the contractor, when the subcontractor asked for a guaranty that the money would be paid to him for the work  he was about to do, and the officer replied: "Well, it is not worth while for you to have a guaranty, for this money will go through our hands and we will see that you are paid," and the Supreme Court held that the promise was not within the statute.

Justice POTTER, who wrote the opinion, on page 488 cited with approval the following:

"A promise to pay the debt of another in consideration of property or funds received, or to be received, of the debtor for that purpose, is not within the statute as the promisor thereby makes the debt his own and incurs a primary liability to which the continuing obligation of the debtor is in a sense collateral: 29 Am. & Eng. Ency. of Law (2d ed.), 917. Another category of cases is that in which the guarantor is the assignee of the property of the person answered for under a trust to pay the debts of the latter. The promise under these circumstances is not within the Statute of Frauds:" 1 Reed on Stat. of Frauds (1884) sec. 52.

And again on page 489:

"Where the promisor has a leading purpose of personal advantage in making the promise, the latter is not a mere guaranty. . . . Where the promisor has a leading purpose of his own to accomplish by the guaranty, the latter becomes a personal obligation of his, to which the responsibility of the person whose debt is guaranteed is a mere incident:" 1 Reed on Statute of Frauds, sec. 72.

And then also cites, Justice STRONG in Maule v. Bucknell, 50 Pa. 39, also cited by Justice STERRETT in Nugent v. Wolfe, supra:

"That a promise to pay the debt of another is not within the statute of frauds, even though the liability of the original debtor continues if the promisor has received a fund pledged, set apart or held for the payment of the debt."

The verdict of the jury established the fact that the promise made by the defendant to the plaintiff was to pay the claim he had against West, if he (plaintiff) would not file his lien against the building which was then in the course of construction, and it also established the fact that the promise was made either to subserve

some interest or purpose of the defendant or that he had a fund in his hands created by the mortgage to pay the debt of the plaintiff, or both.

Applying the law as above cited to the facts as found by the jury, we are convinced that the verdict should stand and a new trial be refused.

*Error assigned* was order refusing the appeal.

*A. S. Moorhead,* of *Dunn & Moorhead,* for appellant.

*Harry Shapera,* with him *McIlvain & Murphy,* for appellee.

OPINION BY RICE, P. J., October 12, 1914:

This is an appeal from the refusal of the court of common pleas to allow the defendant leave to appeal from judgment of the county court rendered upon the verdict of a jury. The defendant's allegation of reasons why a "retrial of the issues of fact is necessary to prevent an injustice" amounts to this, that the evidence given on the trial in the county court was insufficient to support a finding by the jury that the promise upon which the action was brought was made by the defendant, and, even if sufficient for that purpose, was insufficient to support a finding of facts that would take the case out of the operation of sec. 1 of the statute of frauds and perjuries: Act of April 26, 1855, P. L. 308. This is substantially the same reason as that upon which his motion in the county court for binding direction and his subsequent motion for new trial were based. But notwithstanding the earnest argument of appellant's counsel, a careful examination of the evidence and due consideration of the principles of law applicable to the facts which the jury could legitimately find therefrom lead us to the conclusion that the county court properly refused the point. This is so clearly and satisfactorily shown in the well-considered opinion of the learned trial

judge overruling the motion for a new trial, that we deem it unnecessary to go over the ground again.

We cannot agree with appellant's counsel that in such a case all that was required to entitle the defendant to have his application granted was to raise a doubt as to the correctness of the judgment of the county court. An administration of the act of 1913 upon that theory would tend to defeat its purpose by adding to the expense and delay incident to litigation. The irresistible implication from the words of the act is plainly opposed to the theory. As pointed out in Robertson v. Kraus, in which we herewith file an opinion, the court of common pleas is to exercise a sound judicial discretion upon due consideration of the allegation of the petition and the relevant matters brought before it, and may refuse the appeal if, upon such consideration, it is not satisfied that a retrial is necessary to prevent injustice. It is not required, and it would not be the exercise of a sound judicial discretion, to allow the appeal merely because the evidence was in conflict and there was evidence which, if believed by the jury, would have sustained a different verdict, or merely because it would have arrived at a different conclusion upon the issues of fact, if it were its province to decide them. This would be to ignore the verdict of the jury, and clearly there is no warrant for this in the statute.

There having been a fair and legal trial in the county court, and the jury having determined the issues of fact against the defendant, upon sufficient evidence and under appropriate instructions as to the law, it is apparent that the reason assigned by him for leave to appeal is not well founded, and therefore the court wisely exercised its discretion in refusing the petition.

The order is affirmed at the costs of the appellant.